UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-61719-Civ-KMM

**DONNAHUE GOERGE,**

    Plaintiff,

v.

**KEN GRIFFIN, ET AL.**

    Defendants.

_____/

**DEFENDANT FINRA'S OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"),[1] submits this opposition to Plaintiff's Motion for a Preliminary Injunction ("Motion").

**INTRODUCTION**

Plaintiff's Motion fails to satisfy the burden required to grant the extraordinary relief of a preliminary injunction because Plaintiff has no likelihood of success on the merits against FINRA.  First, Plaintiff has failed to state any valid claims against FINRA.  Second, even if Plaintiff had stated valid claims, which he has not, FINRA's regulation of the securities markets is activity for which FINRA is absolutely immune from suit.  Furthermore, the Motion lacks any

---

[1] FINRA is the successor to the National Association of Securities Dealers ("NASD").  *See Virtusio v. Fin. Indus. Regul. Auth. Long Term Disability Income Plan*, No. C 12-3745 PJH, 2012 WL 5389918, at *1 n.1 (N.D. Cal. Nov. 5, 2012).

discussion of the remaining prerequisites for issuance of a preliminary injunction. Plaintiff's Motion must therefore be denied.

## MEMORANDUM OF LAW

## RELEVANT BACKGROUND

### I. FINRA's Role in Regulating the Securities Industry

FINRA is a private, not-for-profit Delaware corporation and self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, *et seq.*, amending the Securities Exchange Act of 1934, 15 U.S.C. §§ 73a, *et seq.* ("Exchange Act"). As an SRO, FINRA is part of the Exchange Act's comprehensive plan for regulating the securities markets. *See* 15 U.S.C. §§ 78q, 78s; *Desiderio v. NASD, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999), *cert. denied,* 531 U.S. 1069 (2001); *see also PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009), *cert. denied*, 559 U.S. 972 (2010). FINRA's regulatory duties are imposed by Congress and require FINRA to conduct the daily regulation and administration of the securities markets. *See, e.g., Turbeville v. Fin. Indus. Reg. Auth., Inc.*, 874 F.3d 1268, 1270-71 (11th Cir. 2017); *Empire Fin. Grp., Inc. v. Fin. Indus. Reg. Auth., Inc.*, No. 08-80534-CIV, 2009 WL 10644856, at *2 (S.D. Fla. Jan. 15, 2009); *see also DL Capital, LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 95 (2d Cir. 2005); *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 241-42 (D.C. Cir. 2003); *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996). Among its regulatory obligations, the Exchange Act requires FINRA to establish rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interest. . . ." 15 U.S.C. § 78o-3(b)(6). The Exchange Act also mandates that FINRA investigate and discipline member firms and their

associated persons for violating FINRA rules or the federal securities laws. *Loftus v. FINRA, Inc.*, 2021 U.S. Dist. LEXIS 18823, *2 (S.D.N.Y. Feb. 1, 2021) (quoting *Datek Secs. Corp. v. Nat'l Assoc. of Secs. Dealers, Inc.*, 875 F. Supp. 230, 232 (S.D.N.Y.)); *see also* 15 U.S.C. § 78o-3(b).

## ARGUMENT

I.   **Required Standards to Support Issuance of a Preliminary Injunction**

A motion for a preliminary injunction is an "extraordinary and drastic remedy" that may not be granted unless the movant clearly establishes the burden of persuasion as to all four prerequisites: (1) a substantial likelihood of success on the merits; (2) that movant will suffer irreparable injury without the injunction; (3) the threat of injury to the movant outweighs any damage the proposed injunction might cause to the opposing party; and (4) the injunction would not be adverse to public interest, if issued. *Siegel v. LePore,* 234 F.3d 1164, 1176 (11th Cir. 2000); *see also Delivery.com Franchising, LLC v. Moore,* 2020 U.S. Dist. LEXIS 108359, *19 (S.D. Fla. June 19, 2020).[2]

II.  **There is No Substantial Likelihood of Success on the Merits**

A.   **Plaintiff's Amended Complaint Is Legally Insufficient.**

Plaintiff has attempted to allege claims for breach of contract and for violations of the federal RICO and antitrust statutes. While a *pro se* litigant's pleadings are to be liberally construed, that does not relieve Plaintiff of the duty to satisfy basic pleadings requirements.

---

[2] The standard outlined in the Motion relates to preliminary injunctions sought under the Securities Act of 1933 and the Exchange Act. [ECF No. 10, at 3-4]; *SEC v. Schooler*, 902 F. Supp. 2d 1341, 1344-45 (C.D. Cal. 2012). Plaintiff, however, has not alleged any Securities laws violations in the Amended Complaint. Moreover, even if this two-part test were applied, Plaintiff's motion would fail against FINRA because Plaintiff does not even allege a prima facie case of any previous violations of the federal securities laws by FINRA. [*See* ECF No. 8.]

*Adderley v. Ego,* 2021 U.S. Dist. LEXIS 50574, *1-*2 (S.D. Fla. Feb. 27, 2021) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Brown v. Crawford,* 906 F.2d 667, 670 (11th Cir. 1990)). Under Fed. R. Civ. P. 8(a), even a *pro se* litigant must provide parties with "fair notice of the claim being made" to allow them to respond intelligently. *May v. Shell Oil Co.,* 2000 U.S. Dist. LEXIS 14818 (S.D. Fla. Aug. 30, 2000).[3] Plaintiff's Amended Complaint falls woefully short of the mark.

Furthermore, "shotgun pleadings," such as the Amended Complaint, that are "replete with conclusory, vague, and immaterial facts" not obviously connected to any particular cause of action," that do not separate "each cause of action or claim for relief" into a different count, and that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" violate the Federal Rules of Civil Procedure. *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021) (citations omitted) (pleadings violate Rules 8 and 10). Such a pleading cannot support a motion for preliminary injunction. *See, e.g.*, *Wicked Grips LLC v. Badaan*, No. 8:21-CV-2131-KKM-SPF, 2021 WL 4710488, at *5 (M.D. Fla. Oct. 8, 2021); *Freeman v. Bay Equity LLC*, No. 2:20-CV-0015, 2020 WL 4700767, at *1 (S.D. Ga. Aug. 13, 2020); *NGM Ins. Co. v. Steven Vaughn Constr., Inc.*, No. 2:20-CV-00850-AMM, 2020 WL 8174631, at *1 (N.D. Ala. June 18, 2020); *Del Valle Imp. & Exp., LLC v. Alnost USA, LLC*, No. 17-24094-CIV, 2018 WL 6261515, at *1 (S.D. Fla. Jan. 8, 2018). The Amended Complaint is a diatribe full of hyperbole and cannot support the Motion under any legal theory.

---

[3]   In addition, while Plaintiff is proceeding *pro se* in this case, it should be noted that prior to being disbarred in December 2008, Plaintiff was a member of the New York bar. *Matter of George*, 58 A.D. 3d 267 (2d Dept. 2008).

### B. Plaintiff Fails to State Any Valid Claims Against FINRA.

To prevail on a motion for preliminary injunction, Plaintiff must first show that "he is likely to succeed on the merits." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008); *see also Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005) ("Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion"). This means the Plaintiff must show that his claims are valid. *See, e.g., Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868, 873 (11th Cir. 2014).

As a threshold matter, being a disgruntled investor in the stock market does not in and of itself give rise to a cause of action. *See, e.g.*, *Sperber v. Boesky*, 849 F.2d 60, 65 (2d Cir. 1988) (noting in the context of a RICO claim that "stockmarket investors know they are in a risky field" and "we are usually skeptical of claims that a defendant is liable to hundreds of thousands or even millions of people"); *see also In re Muskegon Motor Specialties*, 366 F.2d 522, 528 (6th Cir. 1966) ("the stock market is daily influenced by factors of a speculative or emotional nature").

Moreover, the specific causes of action referenced in the Amended Complaint are completely devoid of meaningful allegations and without merit on their face.

### 1. Plaintiff Fails to State a Claim for Breach of Contract.

To prevail on a claim for breach of contract, regardless of what state law applies, Plaintiff must show that there is a contract between him and FINRA. *See, e.g.*, *Slam Dunk I, LLC v. Connecticut Gen. Life Ins. Co.*, 853 F. App'x 451, 453 (11th Cir. 2021) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)) (Florida law); *Camarda v. Certified*

*Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28, 29 (D.C. Cir. 2016) (District of Columbia law). Plaintiff's Motion fails to meet even this most fundamental threshold requirement.

First, as a matter of law, FINRA is not a government agency or a state actor. Courts have held without exception that FINRA, like its predecessor NASD, is "a private actor, not a state actor." *Desiderio*, 191 F.3d at 206; *see also Santos-Buch v. FINRA,* 32 F. Supp. 3d 475, 484 (S.D.N.Y. 2014), *aff'd* 591 Fed. App'x 32 (2d Cir. 2015) ("FINRA is not a state actor."); *McGinn, Smith & Co., Inc. v. FINRA,* 786 F. Supp. 2d 139, 147 (D.D.C. 2011) ("Courts have repeatedly held that FINRA is a private entity and not a government functionary.") (citation omitted). Thus, the bald assertion "that the SEC and other government agencies have breached the contract that they have with myself and other United States Citizens," which he further alleges exists because "[w]e pay them to protect our interest as retail investors . . . ," [ECF No. 8 ¶¶1, 10], could not possibly establish the existence of a contract with FINRA.[4]

Second, Plaintiff has neither alleged that a valid contract existed nor attached a contract to the Amended Complaint. [ECF No. 8.] Being a taxpayer does not in and of itself create a contractual relationship with the United States government and its agencies. *See, e.g.*, *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002); *United States v. Newby*, No. C18-5978RBL, 2020 WL 569866, at *3 (W.D. Wash. Feb. 5, 2020), *aff'd,* 851 F. App'x 757 (9th Cir. 2021); *Skillo v. United States*, 68 Fed. Cl. 734, 742-43 (2005). It is even more obvious that being a taxpayer does not create a contractual relationship with a private entity such as FINRA. Plaintiff does not (and cannot) allege any contractual relationship with FINRA. [*See* ECF No. 8.] As a result,

---

[4]   Moreover, Plaintiff describes the alleged contract as having "the entire worlds [sic] economic system" as a party, *see id.* ¶1, which is clearly an ambiguous and undefined aspect of the purported contract.

Plaintiff has not stated a valid claim for breach of contract against FINRA, as a matter of law, and Plaintiff's Motion must be denied.

### 2. Plaintiff Fails to State a Claim Under Section 1962(c) of the RICO Statute.

To prevail on a claim under the RICO statute, 18 U.S.C. § 1962(c), Plaintiffs must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (citations omitted).

Plaintiff's conclusory and threadbare allegations contend that all of the Defendants have committed fraud on the market and "have created an Enterprise and Conspired and participated in conduct that manipulated the Market and controlled the prices of stocks, to the detriment of myself and other retail investors." [ECF No. 8 ¶2; *see also id.* ¶¶3, 11-30.] Although he attempts to recite the elements of a RICO claim, Plaintiff utterly fails to explain how FINRA specifically did anything illegal under the RICO statutes. Moreover, Plaintiff's improper lumping of allegations against all the Defendants, where he possibly had dealings with only some of them – and not FINRA – is insufficient to state any cause of action against FINRA as a matter of law. *See, e.g.*, *Dolan v. PHL Variable Ins. Co.*, No. CV 3:15-CV-01987, 2016 WL 6879622 at *6-7 (M.D. Pa. Nov. 22, 2016) ("lumping together defendants in a fraud claim is insufficient" under Fed. R. Civ. P. 9).

The Amended Complaint does not and cannot state a claim against FINRA for violations of Section 1962(c). As a result, Plaintiff's Motion must be denied.

### 3. Plaintiff Fails to State a Claim for Antitrust Violations.

"There are three essential elements of a claim alleging attempted monopolization under section 2 of the Sherman Act. First, the plaintiff must show that the defendant possessed the

specific intent to achieve monopoly power by predatory or exclusionary conduct. Second, the defendant must in fact commit such anticompetitive conduct. Third, there must have existed a dangerous probability that the defendant might have succeeded in its attempt to achieve monopoly power." *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986 (11th Cir. 1993), *certified question answered*, 264 Ga. 295, 443 S.E.2d 833 (1994) (citations omitted).

Plaintiff alleges generally (without specifically identifying FINRA) that "[t]he Defendants['] pattern of behavior of allowing market manipulation or participating in Market Manipulation is ongoing and continuous and a violation of the United States Antitrust Laws." [ECF No. 8 ¶2; *see also id.* ¶¶31-37.] Plaintiff does not allege any misconduct by FINRA; instead, the Amended Complaint alleges only that FINRA was aware of the alleged illegal activities. [ECF No. 8 ¶36.] Plaintiff also alleges that FINRA fined some of the defendants but that "the fines and punishments actually motivated the bad actors to continue violating the law." *Id.* Further, the Antitrust allegations do not make sense on their face – as a not-for-profit SRO created by Congressional legislative authority, FINRA is not an entity that could achieve or seek to obtain monopoly power in any market. Finally, Plaintiff does not allege that FINRA intended to commit such actions to create monopoly power or aid anticompetitive conduct.

For these reasons, Plaintiff's Antitrust claim is invalid, and Plaintiff's Motion must be denied.

### C. FINRA Is Absolutely Immune for Its Regulatory Actions.

Even if the Amended Complaint states valid claims, which it does not, Plaintiff still has no likelihood of success on the merits because FINRA is absolutely immune "from suit for conduct falling within the scope of [its] regulatory and general oversight functions." *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001)

(holding that an SRO is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act"); *see also Weissman*, 500 F.3d at 1296 ("Because they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions."); *Partnership Exch. Sec. Co. v. NASD, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999) (holding that the NASD was protected by absolute immunity for its actions taken "under the authority delegated to it by the Exchange Act"); *Austin Municipal*, 757 F.2d at 692 ("NASD is entitled to absolute immunity for its role in disciplining its members and associates."). FINRA's immunity is dispositive in this case.

Whether FINRA is entitled to immunity as an SRO depends upon the nature of the function the SRO is performing. *Sparta,* 159 F.3d at 1214; *accord DL Capital,* 409 F.3d at 97-99 & n.4; *D'Alessio*, 258 F.3d at 104-05; *Barbara,* 99 F.3d at 58; *Zandford v. NASD, Inc.,* 30 F. Supp. 2d 1, 8-9 (D.D.C. 1998). Under the approach taken by every reported appellate decision, the dispositive question is whether, in administering the securities laws under SEC supervision to regulate the market, FINRA was "performing a regulatory function" in its capacity as an SRO, or, put another way, whether the plaintiff's claims arise out of "the discharge of [FINRA's] duties under the Exchange Act." *Sparta,* 159 F.3d at 1213; *see also D'Alessio*, 258 F.3d at 104, 106. An SRO is immune from suit for activities involving the SRO's "performance of regulatory, adjudicatory, or prosecutorial duties in the stead of the SEC." *Weissman v. NASD,* 500 F.3d 1293, 1298 (11th Cir. 2007). That immunity is absolute, and courts do not recognize exceptions to that immunity based on bad faith, *Desiderio v. NASD,* 191 F.3d 198, 208 (2d Cir. 1999), *cert. denied,* 531 U.S. 1069 (2001), fraud, *DL Capital Group, LLC v. Nasdaq Stock Mkt.*,

*Inc.,* 409 F.3d 93, 98 (2d Cir. 2005), or negligence, *Sparta Surgical Corp. v. NASD,* 159 F.3d 1209, 1215 (9th Cir. 1998).

Even if Plaintiff had alleged, which he did not, that FINRA engaged in "the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC," FINRA would still be absolutely immune from suit. *See Series 7 Exam Scoring Litig.*, 548 F.3d at 114 (citing *Weissman v. NASD, Inc.*, 500 F.3d 1293, 1298–99 (11th Cir. 2007)); *see also Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,* 637 F.3d 112, 115 (2d Cir. 2011); *DL Capital,* 409 F.3d at 97. This form of absolute immunity is "an integral part of the American system of securities regulation." *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007). The SEC depends on FINRA and other SROs to perform the critical day-to-day functions of, among other things, conducting investigations and disciplining members or their associated persons for violations of FINRA's rules or the federal securities laws or regulations. *D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 157 (2d Cir. 2002) (FINRA is charged with "conducting investigations and commencing disciplinary proceedings against [FINRA] member firms and their associated member representatives relating to compliance with the federal securities laws and regulations"); *see also Turbeville v. FINRA, Inc.*, 874 F.3d 1268, 1270 (11th Cir. 2017); *Saad v. SEC*, 718 F.3d 904, 907 (D.C. Cir. 2013); *Loftus*, 2021 U.S. Dist. LEXIS 18823, at *2-3 (quoting *Datek Secs. Corp. v. NASD, Inc.*, 875 F. Supp. 230, 232 (S.D.N.Y. 1995)); *Scottsdale Securities v. FINRA, Inc.*, 390 F. Supp. 3d 72, 76 (D.D.C. 2019), *aff'd,* 811 Fed. Appx. 667 (D.C. Cir. 2020).

The relatively few times FINRA is mentioned in the Amended Complaint all reference FINRA's regulatory activities, involving either actions that FINRA took or purportedly failed to take. For example, Plaintiff alleges FINRA "turn[ed] a blind eye" to illegal activities. [ECF No.

8 ¶¶1, 5, 10, 38.] But Plaintiff concedes that FINRA, and other defendants, "fined the bad actors," [ECF No. 8, ¶¶10, 36], and Plaintiff alleges that the fines "seem insignificant" and "motivated the bad actors to continue violating the law." [*Id.* ¶36.] The allegations in the Amended Complaint are all directed to Plaintiff's dissatisfaction with FINRA's regulatory actions.

FINRA is absolutely immune from suit for its regulatory activities, and Plaintiff's Motion must be denied.

### III. Plaintiff Fails to Establish Any of the Remaining Prerequisites for a Preliminary Injunction

Plaintiff bears the burden of establishing all four prerequisites for a preliminary injunction. *Delivery.com Franchising,* 2020 U.S. Dist. LEXIS 108359, at *19. Other than the sentence included in the introductory paragraph to Plaintiff's motion that says, "Plaintiff has highly [sic] likelihood of success on the merits, will suffer irreparable harm without an injunction and an injunction will not substantially injure others while furthering the public interest," [ECF No. 10 at 1], Plaintiff does not address-- much less carry his burden-- with respect to the remaining prerequisites for a preliminary injunction. Plaintiff's Motion must be denied.

11

## CONCLUSION

WHEREFORE, Defendant FINRA respectfully requests that the Court deny Plaintiff's Motion and grant such other and further relief to which FINRA may be entitled.

Respectfully submitted,

*/s/ David S. Mandel*
David S. Mandel
FBN 38040
MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1224
Miami, FL 33131
Telephone: (305) 374-7771
dsm@mandel.law

*Counsel for Defendant,*
*Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 13, 2021, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record; additionally, a copy of the foregoing was sent by US mail to plaintiff at 1012 N.W. 2nd Street, Fort Lauderdale, FL 33311.

*David S. Mandel*